**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LISA YOLANDA CARPIO TAMAYO, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Case No.: 1:13-cv-1745 BAM <br><br> **ORDER ON PLAINTIFF'S** <br> **SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff Lisa Tamayo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act.[1] The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Magistrate Judge Barbara A. McAuliffe. The parties consented to the Magistrate Judge's jurisdiction for all purposes. The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

1

## BACKGROUND

On March 9, 2010, Plaintiff applied for supplemental security income, alleging disability beginning January 1, 1980. AR 15, 147-51. The Commissioner initially denied Plaintiff's claim on October 13, 2010, and upon reconsideration, on January 19, 2011. AR 15, 71-75. Thereafter, Plaintiff filed a timely request for a hearing. On October 25, 2011, Plaintiff, represented by Melissa Proudian, testified at the hearing. AR 32. On November 8, 2011, ALJ Timothy Stueve denied Plaintiff's application. AR 15-22. On June 25, 2013, the Appeals Council denied review. AR 1. This appeal followed.

### Hearing Testimony

The ALJ presided over a video hearing on October 25, 2011, from Oakland, California. AR 27. Plaintiff appeared and testified in Fresno, California with the help of an attorney. Impartial Vocational Expert ("VE") Lynda Berkley also testified. AR 28.

Plaintiff alleges disability due to a learning disorder. Plaintiff was 34 years old at the time of the hearing and lived with her six children. AR 31-32. Plaintiff is married, but her husband is currently incarcerated. AR 31. Plaintiff testified that she completed the ninth grade and had been in special education classes. AR 32. She could read and write "[a] little but not a lot" and had never worked. AR 33. Plaintiff claimed that she could not work because she "[forgot] real easily." AR 34.

When asked about her physical impairments, Plaintiff testified that she did not have any physical problems except for untreated daily migraines. AR 34. While Plaintiff regularly takes her children to the doctor, Plaintiff explained that she has not found a primary physician for herself. She also testified that she has only seen a personal physician for her pregnancies. AR 35. Plaintiff testified that she took her children to the doctor on the bus, and that her older child helped her navigate the bus system. AR 35. Plaintiff stated she does not take the bus by herself because she fears getting lost. AR 46.

When asked about her daily activities, Plaintiff testifies that on a typical day she wakes her children up and helped them to get ready for school. AR 35-36. Plaintiff walked her children to school and then went back home and "pick[ed] up around the house" until it was time to pick up her children. AR 36. Plaintiff cooked meals for dinner and said that her mother-in-law took her grocery

shopping. AR 36. When she went grocery shopping, she did not make a list but just "grab[bed] what I know we need for the house." AR 48. The ALJ asked whether Plaintiff is able to count the money for her grocery items, but Plaintiff testified that she does not do the math because her groceries are debited directly from her food stamp card. AR 41. When at home, Plaintiff watched some television and said she had magazines around the house but did not know how to read them. AR 37-38. Plaintiff said she did not have a driver's license and did not know how to drive. AR 38. She also did laundry and taught her children how to cook. AR 44. Her children also helped her to remember things she needed. AR 48. Plaintiff was able to recall upcoming meetings with her children's teachers and said she would help her children with their homework, although sometimes her older children helped her younger children. AR 44-46.

Thereafter, the ALJ elicited testimony of the vocational expert ("VE") Lynda Berkley. AR 50. After the VE acknowledged that Plaintiff has no past work, the ALJ asked the vocational expert hypothetical questions regarding an individual of Plaintiff's age, education, and work experience who could perform work at all exertional levels; was limited to simple, routine and repetitive tasks involving simple work related decisions, with few, if any workplace changes; and could have occasional interaction with the public. AR 50. The VE testified that such an individual could perform the jobs of janitor, Dictionary of Occupational Titles (DOT) No. 381.687-018 and laundry worker, DOT No. 361.684-014, both of which were unskilled jobs. AR 50.

The ALJ then asked the VE a hypothetical question regarding an individual who could perform one-step tasks with only occasional interaction with the public. AR 50. The VE testified that such an individual is unemployable. AR 51.

**Relevant Medical Evidence**

The entire medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision. AR 244-324. The Court notes, however, that there is no evidence of medical treatment in the record. At the October administrative hearing, Plaintiff confirmed that she does not have a treating physician or any related medical records. Plaintiff is also not taking any medication for her learning disability. AR 231, 233.

///

## THE ALJ'S DECISION

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 15-22. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since January 1, 1980. AR 15. The ALJ identified cognitive disorder as a severe impairment. AR 17. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 17.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, with work limited to simple, routine, and repetitive tasks, involving only simple, work-related decisions, with few, if any, work place changes. In addition, the ALJ limited Plaintiff to work involving only occasional interaction with the public. AR 19. Plaintiff has no past relevant work; however, based on Plaintiff's age, education, and RFC, the ALJ determined that significant jobs exist in the national economy that Plaintiff could perform. AR 21. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. AR 22.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and

if the Commission's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

### DISABILITY STANDARD

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In her opening brief, Plaintiff contends that the ALJ erred in rejecting aspects of the consultative examiner's opinion and improperly discrediting her testimony.

### DISCUSSION[2]

**A.     The ALJ Properly Evaluated he Medical Opinion Evidence**

Plaintiff's first argument is that the ALJ failed to fully adopt the opinion of psychological consultative examiner Dr. Bilbrey. Specifically, Plaintiff argues that the ALJ failed to give specific and legitimate reasons for rejecting Dr. Bilbrey's limitation that Plaintiff is limited to "one-step tasks." (Doc. 12 at 11). The Commissioner responds that there is no evidence in the record that Plaintiff is limited to "one-step tasks." While Dr. Bilbrey limited Plaintiff to "one-part instructions" he further explained that Plaintiff would be able to complete "simple tasks." The Commissioner further argues that to the extent that the ALJ implicitly rejected portions of Dr. Bilbrey's opinion, the ALJ explained his reasons for rejecting any implication that precludes Plaintiff from "simple-repetitive work." AR 21.

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

5

The ALJ found that despite Plaintiff's impairments, Plaintiff was limited to simple, routine, and repetitive tasks, involving only simple, work-related decisions, with few, if any work changes, and she was also limited to work involving only occasional interaction with the public. AR 19. In formulating his opinion, the ALJ gave significant weight to the opinions of Drs. Bilbrey, Spindell, and Loomis.

### 1. Dr. Bilbrey

On August 27, 2010, Robert Bilbrey, Ph.D., the psychological consultative examiner, conducted a psychological evaluation. AR 251-55. Dr. Bilbrey reported that Plaintiff was casually attired with adequate grooming and hygiene. AR 251. Plaintiff was cooperative and a good historian but appeared somewhat dysphoric. AR 251. Plaintiff reported a learning disability but denied any other psychological issues. AR 251. Plaintiff lived with her husband and six children. AR 252. Although she did not drive, she was able to do most chores, run a few errands, and perform activities of daily living. Plaintiff reported getting along well with family and friends, neighbors, and strangers. AR 252. Upon examination, Plaintiff was fully oriented with normal mood. AR 252. Dr. Bilbrey reported that although Plaintiff appeared to have some impairment in attention and concentration and there was slight evidence of psychomotor retardation; there was no hyper-distractibility or hyperactivity. AR 252. Plaintiff's basic insight and judgment were mostly intact and her fund of knowledge was somewhat impaired. AR 252. Plaintiff's speech was slow but clear and she demonstrated significant memory impairment. AR 253. Plaintiff's IQ scores and memory testing were below average and she performed poorly on the Bender-Gestalt II and Trails A and B tests. AR 254. Dr. Bilbrey diagnosed mild mental retardation and assessed a GAF[3] score of 70. AR 254.

Dr. Bilbrey concluded that Plaintiff could follow one-part instructions and handle simple tasks, although she would have moderate difficulty with two-part instructions and marked difficulty learning

---

[3] "A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations." *Cornelison v. Astrue*, 2011 U.S. Dist. LEXIS 138427, 2011 WL 6001698, at *4 n.6 (C.D. Cal. Nov. 30, 2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th ed.2000)). A GAF score of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful relationships (Diagnostic and Statistical Manual of Mental Disorders Text Revision ("DSM"), 34 (4th ed. 2000)).

complex tasks. AR 254. Plaintiff could interact adequately with others and would have no difficulty concentrating or persisting independently at work-related activities at a consistent pace for a normal workday or work week, or responding to changes in a routine work setting. AR 254. Plaintiff might have moderate difficulty conforming to a schedule. AR 254.

With respect to Dr. Bilbrey's opinion, ALJ Stueve found as follows:

> I concur with the findings of Dr. Bilbrey and of the State agency psychiatric examiner, according their opinions significant probative weight because they are consistent with the findings contained in the psychological report performed in July 2003 by State agency psychological examiner William A. Spindell, Ph. D. In reaching my mental RFC determination herein, I have viewed the evidence in the light most favorable to the claimant, including adopting the State agencies conclusion that the claimant has moderate limitation in social interaction, despite a lack of support in the record. As previously noted, the claimant herself admitted that she has no problems interacting with family, friends, and strangers.
>
> In addition, except as noted herein, there is no other pertinent psychiatric evidence of record or proposed mental residual functional capacity assessment for me to consider.

AR 20-21.

**2.     Dr. Spindell**

William A. Spindell, Ph.D., conducted a psychological evaluation of Plaintiff on July 25, 2003, in relation to a previous application for continuing disability. AR 244-46. Upon examination, Dr. Spindell noted that Plaintiff presents herself and has been on SSI for a number of years. He noted Plaintiff dropped out of high school in the 11th grade. She is on prenatal vitamins and she has no work history. AR 244. Plaintiff reported that "it is her duty to take care of her children."

Plaintiff was neatly dressed and well groomed with a modest fund of cultural information and modestly developed vocabulary. AR 245. Her memory functions appeared reasonably good for both remote and recent material. There was no evidence of pressured speech, neologisms, expressive or receptive problems, or anything that would suggest an underlying neurological disorder. Plaintiff needed no assistance with her activities of daily living but did not have a driver's license. AR 246. Plaintiff indicated that she would like to work, but wanted to wait until her children were older. Dr. Spindell diagnosed mild mental retardation. AR 245. Dr. Spindell stated that Plaintiff could address several aspects of the labor market, including fast food, food sorting and preparation, janitorial or other activities. AR 246.

### 3. Dr. Loomis

On September 29, 2010, State agency psychiatrist K. Loomis, M.D., reviewed the evidence in the record and completed a Mental Residual Functional Capacity Assessment (AR 256-58) and a Psychiatric Review Technique Form (PRTF). AR 259-69. Dr. Loomis found that Plaintiff had a cognitive disorder/learning disorder. AR 260. Dr. Loomis opined that Plaintiff had mild limitations in activities of daily living, moderate limitations in social functioning and maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration. AR 267.

Under "Summary Conclusions," Dr. Loomis found Plaintiff was moderately limited in the ability to interact appropriately with the general public and to understand, remember, and carry out detailed instructions, but was otherwise not significantly limited in mental activities. AR 256-57. Dr. Loomis elaborated on the "Summary Conclusions" in the "Functional Capacity Assessment." AR 258. Dr. Loomis specifically opined that Plaintiff had the functional capacity to understand, remember, and carry out simple, one-to-two step tasks; to maintain concentration, pace, and persistence throughout a normal work day or work week as related to simple tasks; to interact adequately with co-workers and supervisors although she may have difficulty dealing with the demands of general public contact; and to make adjustments and avoid hazards in the workspace. On January 19, 2011, L. Lindlief reviewed and affirmed these findings. AR 281.

### 4. Legal Standard

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." *Lester*, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990). The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. "The opinion of a nonexamining

physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. Although a treating physician's opinion is generally entitled to significant weight, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Greater weight should be given to the "opinion of a specialist about medical issues related to his or her area of specialty." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)). The least weight is given to the opinion of a non-examining professional. *See Pitzer v. Sullivan*, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

An ALJ may properly rely upon only selected portions of a medical opinion while rejecting other parts, *see, e.g., Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes substantial evidence), however, such selective reliance must be consistent with the medical record as a whole. S*ee, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ cannot reject portion of medical report that is clearly reliable). Moreover, although "[a]n ALJ is not entitled to pick and choose through a physician's opinion," *Sklenar v. Barnhart*, 195 F. Supp. 2d 696, 703 n.6 (W.D. Pa. 2002) (citations and quotation omitted), he may give specific and legitimate reasons for declining to adopt part of an opinion. *See Magallanes*, 881 F.2d at 755 (declining to adopt physician's opinion about onset date).

**5. Analysis**

Plaintiff argues that the ALJ accepted Dr. Bilbrey's opinion, but ignored Dr. Bilbrey's finding that Plaintiff could not complete "one-step tasks" without providing a reason for doing so. Plaintiff's argument fails for several reasons. First, Plaintiff's argument, as written, is factually incorrect. While Plaintiff claims that Dr. Bilbrey limited her to "one-step tasks," Dr. Bilbrey explicitly stated that Plaintiff could follow "one-part instructions and can handle simple tasks . . . ." Dr. Bilbrey elaborated on his opinion and further explained that "claimant would have no difficulties concentrating or persisting independently at work-related activities at a consistent pace for a normal workday or workweek. AR 256. This evidence is inconsistent with Plaintiff's contention that Dr. Bilbrey limited

Plaintiff to "one-step tasks." Dr. Bilbrey never opined that Plaintiff is limited to "one-step tasks," and likewise, the ALJ did not find that Plaintiff was so limited. While Plaintiff presumes that Dr. Bilbrey's limitation to "one-part instructions" is synonymous with a limitation to one-step tasks, the ALJ's interpretation of the record is entitled to deference. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record"). Here, the Court cannot say that the ALJ's interpretation of Dr. Bilbrey's opinion is inconsistent with Dr. Bilbrey's medical observations. Thus, this reviewing court must defer to the ALJ.

Second, to the extent that Plaintiff argues that the ALJ should have found that she is limited to "one-step tasks," Plaintiff's argument also fails. The ALJ considered the opinions of all the doctors that evaluated Plaintiff's learning disorder. AR 20. Much like the ALJ's RFC finding, all three physicians—Drs. Bilbrey, Spindell, and Loomis—concluded that Plaintiff had the ability to perform a wide range of work or at a minimum perform simple, repetitive tasks. Dr. Bilbrey found that Plaintiff "can handle simple tasks" and she would have "no difficulties persisting independently…in a routine work environment." AR 254. Dr. Spindell opined that Plaintiff "could address several aspects of the labor market," including working in fast food and other activities. AR 246. Dr. Loomis opined that Plaintiff would not be "significantly limited" in her "ability to remember locations and work-like procedures;" and she would also have minimal limitations in her "ability to understand and remember very short and simple instructions" AR 256. Dr. Loomis explained that "Plaintiff is capable of understanding, remembering and carrying out simple one-to-two step tasks." AR 258. Thus, contrary to Plaintiff's assertion, the ALJ's assessment that Plaintiff can perform "simple, routine, and repetitive tasks, involving only simple, work-related decisions," is in concert with the opinions of the three physicians that the ALJ relied on and is further evidence in support of the ALJ's finding that Plaintiff had the ability to complete simple and repetitive tasks.

Finally, even assuming that the ALJ's opinion conflicts with Dr. Bilbrey's medical opinion; the ALJ expressed his reasoning for rejecting any contention that Plaintiff is unable to perform simple, repetitive work. The ALJ stated "I find the testimony and allegations of the claimant not generally

credible, at least to the extent that she would have me believe her mental symptoms would preclude her from performing simple-repetitive work on a consistent basis involving only occasional social interaction. She admitted that she is independent in most if not all activities of daily living, including caring for her 6 children. She has taught her children to cook, and is fully aware of upcoming teachers' appointments. She claims not to remember many things, but she is able to recall that her husband has been incarcerated for 8-9 months." AR 21. An ALJ may reject all or part of a medical opinion by setting forth specific and legitimate reasons that are supported by substantial evidence in the record. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Essentially, it is the ALJ's province to review and evaluate the evidence as a whole. If the ALJ's interpretation is supported by substantial evidence, it will be upheld. *See Magallanes,* 881 F.2d at 751.

Contrary to Plaintiff's argument, the ALJ weighed the medical opinions and the evidence in the record, discussed them, and articulated legitimate reasons for finding the limitations as set forth in the opinion. While the evidence may be subject to alternate interpretations, the Court may not simply substitute the ALJ's opinion. The ALJ's interpretation of the evidence is not erroneous, is supported by the record, and therefore must be affirmed. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Court therefore finds no reversible error in the treatment of Dr. Bilbrey's opinion in the ALJ's decision.

Lastly, with regard to Plaintiff's argument that the ALJ failed to rely on adequate VE testimony, Plaintiff's argument suffers the same fate as seen above. The VE testified that an individual of Plaintiff's age, education and work experience who was limited to one-step tasks with only occasional interaction with the public could not do work. AR 50-51. However, the ALJ is only required to rely on hypotheticals that include limitations supported by the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001)) (an ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence). As noted directly above, Plaintiff's contention that she is limited to one-step tasks is not supported by the record and therefore the ALJ's Step Five finding is also free of error.

///

///

**B.     The ALJ Did Not Err in Discrediting Plaintiff's Subjective Symptom Complaints**

Second, Plaintiff argues that the ALJ failed to provide clear and convincing evidence for finding her subjective testimony lacked credibility. Specifically, Plaintiff argues that it was improper for the ALJ to consider her lack of mental health treatment in rejecting her subjective symptom testimony. (Doc. 13 at 9).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). Other factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

With respect to Plaintiff's credibility, the ALJ found as follows:

> The claimant asserts learning disabilities as basis for disability. She testified she has migraines and would not be able to remember things asked of her after the hearing. She has magazines around the house, has a cell phone which she uses to talk to her mother-in-law and [her children's] school. She takes public transportation. She takes care of her 6 children, getting them ready for, and dropping off and picking them up from, school. She cooks and picks up around the house, does laundry and pays bills. She teaches her children how to cook. Her mother-in-law takes her grocery shopping and takes her to get her kids for school. She can add and subtract little numbers, is unable to count money, and can sometimes tell if she is being overcharged for groceries. Her husband has been incarcerated for 8-9 months. She knows she has upcoming teacher appointments.
>
> The claimant reported to the State agency psychological examiner that she is independent in all activities of daily living, and gets along with family, friends, and strangers.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence,

and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The claimant's psychiatric medical evidence of record is relatively sparse in this matter.

…

Finally, I find the testimony and allegations of the claimant not generally credible, at least to the extent that she would have me believe her mental symptoms would preclude her from performing simple-repetitive work on a consistent basis involving only occasional social interaction. She admitted that she is independent in most if not all activities of daily living, including caring for her 6 children. She has taught her children to cook, and is fully aware of upcoming teachers' appointments. She claims not to remember many things, but she is able to recall that her husband has been incarcerated for 8-9 months.

AR 20-21.

Contrary to Plaintiff's arguments, the ALJ proffered clear and convincing reasons for rejecting her credibility. First, the ALJ noted that "the psychiatric medical records in this case were sparse." AR 20. *See Molina*, 674 F.3d at 1112 (ALJ may consider an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment). At the October administrative hearing, Plaintiff indicated that she did not have a doctor and was not taking any medications. AR 231, 233. Indeed, there is no indication in the record that Plaintiff was undergoing any mental health treatment; she has neither treating physician nor evidence of any doctor visits.

Relying on *Clark v. Astrue*, Plaintiff contends that the ALJ erroneously discounted her credibility based on failure to seek treatment from a specialist. *See Clark v. Astrue*, 2010 U.S. Dist. LEXIS 10210, 2010 WL 457357, *5 (E.D. Wash. Feb. 5, 2010). In *Clark*, the Eastern District of Washington held that "[i]t was not appropriate for the ALJ to consider plaintiff's limited mental health treatment as evidence of a lack of credibility since the failure to follow through with mental health treatment may itself be a symptom of significant mental health problems." *Id. Clark* is not directly applicable to the case at bar. In *Clark*, the Court noted that "depression is one of the most under-reported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness." *Id.* at *12. Plaintiff has cited no evidence here that her failure to seek medical treatment is a symptom of any mental impairment. Further, even if the ALJ improperly considered Plaintiff's lack of treatment, the ALJ gave other sufficient reasons to reject Plaintiff's credibility.

13

For example, the ALJ also found that Plaintiff's activities of daily living diminished her credibility. AR 21. *See Molina*, 674 F.3d at 1112 (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"). Plaintiff testified that she cooked, cleaned, went grocery shopping, played with her children, took her children to doctor's appointments, and did laundry. AR 35-36, 44, 248. As the ALJ noted, Plaintiff also testified that she was the primary caregiver for her six children. AR 21, 34. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ found that the claimant's activities "suggest that she is quite functional" where claimant was able to care for her own personal needs, shop, and interact with her nephew and her boyfriend despite both physical and mental impairments); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("The ALJ also pointed out ways in which [the claimant's] claim to have totally disabling pain was undermined by her own testimony about her daily activities, such as attending to the needs of her two young children, cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every week"); *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's allegations properly discounted in part due to his ability to occasionally care for a friend's child). Indeed, as the ALJ noted, Plaintiff taught her children how to cook, and is actively involved in her children's schooling. AR 21, 44. It was proper for the ALJ to consider these daily activities in discounting Plaintiff's credibility.

Finally, the ALJ properly considered his own observations when evaluating Plaintiff's credibility. The ALJ noted that although Plaintiff allegedly had a poor memory and claimed she would not be able to remember things asked of her after the hearing, she was able to recall upcoming appointments with her children's teachers and that her husband had been incarcerated for eight or nine months. AR 21, 34, 44, 47; *See Molina*, 674 F.3d at 1112 ("ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct"). The record further contains several other conflicting examples of Plaintiff's "poor memory." The ALJ asked Plaintiff to state her children's ages. AR 32. While Plaintiff testified that she could not remember how old her children were, on several occasions, Plaintiff referred to her children by their ages. AR 32, 35, 38. Plaintiff also expressed that she did not know how to seek medical help for her migraines, but also

testified that she regularly takes her children to the doctor whenever they need shots or fall sick. AR 35, 38. Plaintiff further remembered when and how she and her husband met over fifteen years ago and how old she was at the time. The ALJ's observations here are particularly relevant in light of Plaintiff's alleged disability that "she forgets real easily." AR 34. The Court finds this reason for discounting Plaintiff's testimony to be clear, convincing, and supported by substantial evidence.

Overall, the ALJ provided clear and convincing reasons in making a negative credibility finding. It is not the role of the court to second-guess the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes,* 881 F.2d at 750. Even if the ALJ considered an improper factor in the credibility finding, the error is harmless because the ALJ cited several other legitimate credibility considerations supporting the finding and constituting clear and convincing evidence.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Commissioner of Social Security, and against Plaintiff, Lisa Tamayo.

IT IS SO ORDERED.

Dated: **March 12, 2015**          /s/ *Barbara A. McAuliffe*
                                   UNITED STATES MAGISTRATE JUDGE